BENJAMIN B. WAGNER
United States Attorney
GRANT B. RABENN
KEVIN P. ROONEY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 559-4000
Facsimile: (559) 559-4099

Attorneys for the
  United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DERIK CARSON KUMAGAI,

Defendant.

CASE NO.  1:14-CR-00061-AWI

MEMORANDUM OF PLEA
AGREEMENT PURSUANT TO RULE
11(c) OF THE FEDERAL RULES
OF CRIMINAL PROCEDURE

Hon. Anthony W. Ishii

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United States of America, by and through Benjamin B. Wagner, the United States Attorney for the Eastern District of California, and Assistant United States Attorney Grant B. Rabenn, and Defendant, DERIK CARSON KUMAGAI and his attorney, E. MARSHALL HODGKINS, have agreed as follows.

This document contains the complete Memorandum of Plea Agreement ("Plea Agreement") between the United States Attorney's Office for the Eastern District of California ("Government") and defendant DERIK CARSON KUMAGAI regarding this

case.  This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

1.  Charges.

The defendant acknowledges that he has been charged in a four (4) count indictment as follows:

Conspiracy to Commit Federal Programs Bribery, in violation of Title 18, United States Code, Section 371;

Federal Programs Bribery and Aiding and Abetting, in violation of Title 18, United States Code, Section 666(a)(1)(B) & 2;

Conspiracy to Commit Extortion, in violation of Title 18, United States Code, Section 1951; and

Attempted Extortion and Aiding and Abetting, in violation of Title 18, United States Code, Section 1951 & 2.

2.  Nature, Elements and Possible Defenses.

The defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney, and the possible defenses thereto. Further, the defendant understands that in order to prove him guilty of the charge of conspiring to commit federal programs bribery, the government must prove each of the following elements beyond a reasonable doubt.

///

///

First, from in or around October 2013 through in or around March 2014, there was an agreement between two or more persons to commit federal programs bribery, the elements of which are set forth below;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, at some time during the existence of the conspiracy, at least one of the members performed an overt act in order to further the objective of the conspiracy.

The elements of the crime of Federal Programs Bribery are:

First, the defendant was an agent of a local, state, or federal agency receiving federal assistance in excess of $10,000 in a one-year period before or after the commission of the offense;

Second, the federal assistance involved a grant, contract, subsidy, loan, guarantee, insurance, or other form of assistance;

Third, the defendant corruptly solicited or demanded, or aided and abetted, for the benefit of any person, or accepted or agreed to accept, a thing of value from any person;

Fourth, the defendant intended to be influenced or rewarded, or aid and abet, in connection with a transaction or series of transactions of the agency involving $5,000 or more.

///

3. Agreements by the Defendant.

(a) Defendant agrees that this plea agreement shall be filed with the court and become a part of the record of the case.

(b) Defendant agrees to enter a plea of guilty to Count One of the Indictment, which charges him with Conspiracy to Commit Federal Programs Bribery, in violation of Title 18, United States Code, Section 371.

(c) Defendant understands and agrees that he will not be allowed to withdraw his plea should the Court fail to follow the government's sentencing recommendations.

(d) Defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction, restitution imposed, forfeiture order, and sentence. This waiver of appeal includes, but is not limited to, an express waiver of defendant's right to appeal his plea, conviction, restitution imposed, forfeiture order, and sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, and defendant further agrees not to contest his plea, conviction, restitution imposed, forfeiture order, and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255, other than non-waivable claims.

(e) Defendant further acknowledges that his plea of guilty is voluntary and that no force, threats, promises or representations have been made to anybody, nor agreement reached, other than those set forth expressly in this agreement,

to induce the defendant to plead guilty.

(f) Defendant agrees that his base offense level for Conspiracy is fourteen (14) for being a public official pursuant to Section 2C1.1(a)(1) of the United States Sentencing Commission Guidelines Manual ("USSG"). Defendant agrees that a four (4) level enhancement applies for a transaction involving more than $10,000 pursuant to USSG Section 2C1.1(b)(2) and 2B1.1(b)(C). The defendant also agrees that a four (4) level enhancement applies for being public official in a sensitive position pursuant to USSG Section 2C1.1(b)(3).

(g) The defendant agrees that the application of the U.S. Sentencing Guidelines to his case results in a reasonable sentence. The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005)), and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission

in formulating the Guidelines. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

(h) Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

(i) The defendant also agrees to a personal forfeiture money judgment in an amount to be determined by the court at the time of sentencing as the result of the underlying criminal scheme and the violations of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). As part of the imposition of the personal forfeiture money judgment, the Defendant agrees to provide this Office with signed waivers related to federal and state income tax returns, and a waiver of the Right to Financial Privacy Act, which includes, but is not limited to, any credit records, communication records, DMV records, educational records, employment records, military records, business records, and credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal

tax return information), whatever financial information disclosure form which may be required by an agency, as well as this Office's Right to Financial Privacy Act Waiver & Authorization to Release Information form.

Defendant agrees to fully assist the government in the forfeiture of any seized assets or assets later determined to be forfeitable and to take whatever steps are necessary to pass clear title to the United States. Defendant shall not sell, transfer, convey, or otherwise dispose of any assets found to be connected to the criminal events charged in the Indictment.

Defendant agrees not to file a claim to any of the seized property in any criminal proceeding or civil proceeding, administrative or judicial, which is or may be initiated. Defendant agrees to waive right to notice of any forfeiture proceeding involving such property, and agrees to not file a claim or assist others in filing a claim in such a proceeding.

The Defendant waives the notice provisions of Fed. R. Crim. P. 7(c) and 32.2(a), waives oral pronouncement of forfeiture at the time of sentencing and any defects in such pronouncement that pertain to forfeiture, and waives any defenses to forfeiture, including any defense predicated on the Ex Post Facto, Double Jeopardy, and Excessive Fines Clauses of the United States Constitution. The Defendant knowingly and voluntarily waives any right to jury trial in any criminal or civil forfeiture proceeding.

(j) If the defendant's conviction on the count to which he is pleading is ever vacated at the defendant's request, or his

sentence is ever reduced at his request, the government shall have the right to: (1) prosecute the defendant on any of the counts to which he pleaded guilty; (2) reinstate any counts that may be dismissed under this agreement; and (3) file any new charges that would otherwise be barred by this agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision, including Double Jeopardy. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, without limitation, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

If it is determined that the defendant has violated any provision of this Agreement or if the defendant successfully moves to withdraw his plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after his Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United Sates Constitution, any statute, the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Agreement, or any leads derived therefrom,

should be suppressed. By signing this Agreement, the defendant waives any and all rights in the foregoing respects.

(k) Defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

If the defendant commits any crimes or if any of the defendant's statements or testimony prove to be knowingly false, misleading, or materially incomplete, or if the defendant otherwise violates this plea agreement in any way, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. The determination whether the

MEMORANDUM OF PLEA AGREEMENT

defendant has violated the plea agreement will be under a probable cause standard. If the defendant violates the plea agreement, she shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to perjury, false statements, and obstruction of justice. Because disclosures pursuant to this plea agreement will constitute a waiver of the Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and/or information provided by the defendant. Moreover, any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees to waive all defenses based on the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this plea agreement.

If it is determined that the defendant has violated any provision of this plea agreement or if the defendant successfully moves to withdraw her plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought

against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

4. <u>Agreements by the Government.</u>

(a) The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in Section 3E1.1 of the United States Sentencing Commission Guidelines Manual.

(b) The government agrees that the defendant's base offense level for Conspiracy is fourteen (14) for being a public official pursuant to Section 2C1.1(a)(1) of the United States Sentencing Commission Guidelines Manual ("USSG"). The government agrees that a four (4) level enhancement applies for a transaction involving more than $10,000 pursuant to USSG Section 2C1.1(b)(2) and 2B1.1(b)(C). The government also agrees that a four (4) level enhancement applies for being public official in a sensitive position pursuant to USSG Section 2C1.1(b)(3).

(c) The government agrees to recommend a sentence at the

low-end of the guideline range.

(d) The defendant acknowledges and understands that the government makes no other representations to him regarding fines, whether any other specific offense characteristics apply to his conduct under Chapter Two of the Guidelines, the restitution owed, his criminal history or criminal history points under Chapter Four or whether additional enhancements or reductions under Chapter Three or Five of the United States Sentencing Guidelines apply and defendant understands that the government is free to comment and to make recommendations to the court and the probation office regarding those matters.

(e) If the government determines that the defendant has provided substantial assistance to law enforcement authorities and has complied with his obligations under paragraph 4(l) of the Plea Agreement, the government will move for and recommend, pursuant to Section 5K1.1 of the Sentencing Guidelines and/or pursuant to Rule 35 of the Federal Rules of Criminal Procedure, a reduction from the applicable guideline sentence. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance. The defendant understands that the government also has sole and exclusive discretion as to whether to recommend a reduction or to recommend no reduction at all in the sentence, depending upon the level of assistance the government determines the defendant has provided.

(f) The defendant further understands that a motion

pursuant to Section 5K1.1 of the Sentencing Guidelines is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right upon the defendant to require that the government make a Section 5K1.1 motion, and that this Plea Agreement confers no remedy upon the defendant in the event that the government declines to make a Section 5K1.1 motion. In particular, the defendant agrees not file a motion to withdraw his plea based on the fact that the government decides against a sentence reduction recommendation or recommends a sentence reduction less than the defendant thinks is appropriate. If the defendant does not comply with his obligations under this Plea Agreement, and specifically with his obligations under paragraph 4(h) of the Plea Agreement, then the government is free to institute new charges and/or add new charges, to make any recommendation related to the defendant's sentence, and to move for an upward departure in the defendant's adjusted offense level.

     5.   <u>Factual Basis.</u>

    Defendant will plead guilty because he is in fact guilty of the crime set forth in Count One of the Indictment. Defendant also agrees that the following are the facts of this case, although he acknowledges that, as to other facts, the parties may disagree:

> The defendant, DERIK CARSON KUMAGAI, conspired with co-defendant SAYKHAM SOMPHOUNE to receive what they believed to be a bribe payment from an individual they

believe to be under investigation by law enforcement (described below as "Person Y").

The Fresno Police Department ("FPD") was an agency of the City of Fresno, State and Eastern District of California. FPD was vested by Section 830 et. seq. of the California Penal Code with law enforcement powers, as well as the exercise and performance of all duties and obligations imposed on the agency by law.

From in or around October 2012 through in or around October 2013, FPD received more than $10,000 in funds from the United States Government in the form of grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance.

The defendant, DERIK CARSON KUMAGAI, was a detective in the Vice and Intelligence Unit of FPD. Co-defendant Saykham Somphoune was involved in and associated with other individuals in manufacturing and distributing marijuana from California to other states. Person Y was an individual under investigation for manufacturing and distributing marijuana, and other crimes.

Starting on or about April 2012, federal law enforcement agencies (the "case agents") were investigating a group of individuals based in the Fresno area suspected of cultivating marijuana in California and distributing that marijuana in California and other states. Case agents were also investigating the financial aspects of that criminal enterprise, including the suspected use of bank accounts to launder the cash proceeds from marijuana sales. The individuals under investigation included co-defendant Saykham Somphoune and Person Y. Co-defendant Saykham Somphoune and Person Y worked together to manufacture marijuana in Fresno and elsewhere in California, and to distribute marijuana in California and to other States.

Defendant DERIK CARSON KUMAGAI and co-defendant Saykham Somphoune met with Person Y throughout October 2013 and November 2013. During those meetings, defendant DERIK CARSON KUMAGAI and co-defendant Saykham Somphoune informed Person Y that he was being investigated by federal law enforcement agents. defendant DERIK CARSON KUMAGAI and co-defendant Saykham Somphoune also informed Person Y that defendant DERIK CARSON KUMAGAI and others could close the federal criminal investigation into Person Y in return for a bribe payment.

On November 6, 2013, defendant DERIK CARSON KUMAGAI accepted a $20,000 cash payment from Person Y. Defendant DERIK CARSON KUMAGAI kept the $20,000 for

his personal use, and did not alert FPD or any law
enforcement agency that he had received this cash
payment. Soon after the meeting, Person Y met with FPD
officers other than defendant DERIK CARSON KUMAGAI and
completed purported FPD documents to be designated as
a confidential informant for FPD.

In furtherance of the conspiracy, defendant DERIK
CARSON KUMAGAI and co-defendant Saykham Somphoune
carried out the following overt acts.

On or about October 20, 2013, co-defendant Saykham
Somphoune met with Person Y and provided Person Y with
information about a search warrant executed by law
enforcement and told Person Y that he was being
investigated by law enforcement agents.

On or about October 21, 2013, co-defendant Saykham
Somphoune met with Person Y and informed Person Y that
defendant DERIK CARSON KUMAGAI and others were asking
for $60,000 to close the purported investigation into
Person Y.  Co-defendant Saykham Somphoune also
informed Person Y that defendant DERIK CARSON KUMAGAI
would be available to meet with Person Y to discuss
the bribe payment.

On or about October 22, 2013, defendant DERIK CARSON
KUMAGAI and co-defendant Saykham Somphoune met with
Person Y.  Defendant DERIK CARSON KUMAGAI informed
Person Y about a purported federal investigation into
Person Y, and stated that the purported investigation
could be closed in return for a bribe payment.

On or about October 30, 2013, defendant DERIK CARSON
KUMAGAI and co-defendant Saykham Somphoune met with
Person Y to discuss the proposed bribe payment.
Defendant DERIK CARSON KUMAGAI provided Person Y with
information about a purported pending prosecution
against Person Y, and stated to Person Y that he
(defendant DERIK CARSON KUMAGAI) could have the
purported prosecution dropped in exchange for $40,000.
Defendant DERIK CARSON KUMAGAI also advised Person Y
that defendant DERIK CARSON KUMAGAI could arrange for
Person Y to be signed up as a confidential informant
for FPD, which would assist in having the purported
prosecution against Person Y dropped.

On or about November 5, 2013, defendant DERIK CARSON
KUMAGAI and co-defendant Saykham Somphoune met with
Person Y to further discuss the proposed bribe
payment.  Defendant DERIK CARSON KUMAGAI and co-
defendant Saykham Somphoune arranged with Person Y for
the proposed bribe payment to take place the following
day.

On or about November 6, 2013, defendant DERIK CARSON KUMAGAI met with Person Y and accepted a $20,000 cash payment from Person Y. Defendant DERIK CARSON KUMAGAI kept the $20,000 for his personal use, and did not alert FPD or any law enforcement agency that he had received this cash payment. Defendant DERIK CARSON KUMAGAI was not entitled to receive this payment as a FPD detective. Within hours after defendant DERIK CARSON KUMAGAI received the cash payment from Person Y, another FPD detective documented and designated Person Y as a FPD confidential informant.

In carrying out the above-described overt acts, defendant DERIK CARSON KUMAGAI sought to enrich himself by corruptly accepting payments and offers of payments with the intent of being influenced and rewarded for taking official action, and causing other employees of FPD to take official action, including Person Y's designation and documentation as a FPD confidential informant.

6.   Potential Sentence.

The following is the maximum potential sentence which defendant faces:

Count One: Conspiracy

(a)   Imprisonment.

Maximum:  5 years.

(b)   Fine.

Maximum: Two-Hundred and Fifty Thousand ($250,000).

(c)   Both such fine and imprisonment.

(d)   Term of Supervised Release:

Maximum: Three years.

(Should the defendant violate any of the terms of his supervised release, he can be returned to prison for the period of supervised release actually imposed by the Court or two years, whichever is less.)

(e)   Penalty Assessment.

Mandatory: One Hundred dollars ($100.00).

7.  <u>Waiver of Rights.</u>

Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a)  If defendant persisted in a plea of not guilty to the charges against him, he would have the right to be represented by an attorney at all stages of the proceedings, and would have a right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury. Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b)  If the trial were a jury trial, the jury would be composed of twelve lay persons selected at random.  Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

(c)  If the trial were held before a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he was persuaded of the defendant's guilt beyond a reasonable doubt.

(d)  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.  Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.  In turn, defendant could present witnesses and other evidence on his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. At trial, the defendant would also have the right to assistance of legal counsel.  If he could not afford legal counsel, one would be appointed for him by the court at no expense to him.

(e)  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from this refusal to testify.

Defendant understands that by pleading guilty he is waiving all of the rights set forth above and defendant's attorney has explained those rights to him and the consequences of his waiver of those rights.

8.  Questions by Court.

Defendant understands that if the court questions him under oath, on the record and in the presence of counsel, about the offense to which he has pleaded guilty, his answers, if false, may later be used against him in a prosecution for perjury.

9.  Entire Agreement.

This plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement.  There have been no

MEMORANDUM OF PLEA AGREEMENT                18

1    representations or promises from anyone as to what sentence this

2    Court will impose.

3        10.  Court not a Party.

4        It is understood by the parties that the sentencing court

5    is neither a party to nor bound by this agreement and the

6    sentencing judge is free to impose the maximum penalties as set

7    forth in paragraph 6.  Further, in making its sentencing

8    decision, the Court may take into consideration any and all

9    facts and circumstances concerning the criminal activities of

10   defendant, including activities which may not have been charged

11   in the indictment.

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1    11. **Presentence Report.**

2    Defendant understands that the United States Probation

3    Office is not a party to this agreement and will conduct an

4    independent investigation of defendant's activities and his

5    background. It will then prepare a presentence report which it

6    will submit to the Court as its independent sentencing

7    recommendation. In addition, the government will fully apprise

8    the Probation Office, as well as the Court, of the full and true

9    nature, scope and extent of the defendant's criminal activities,

10   including information on his background and criminal history.

11   Dated:  2/20/15                    BENJAMIN B. WAGNER

12                                      United States Attorney

13                               By:

14                                      GRANT B. RABENN
                                        Assistant U.S. Attorney

15

16   Dated:  2/12/15

17                                      DERIK CARSON KUMAGAI
                                        DEFENDANT

18   Dated: 2/12/15

19                                      E. MARSHALL HODGKINS
                                        ATTORNEY FOR DEFENDANT

20

21

22

23

24

25

26

27

28