E. MARSHALL HODGKINS #76796
1186 W. Shaw Avenue #103
Fresno, California 93711
Telephone: (559) 248-0900
Facsimile: (559) 248-0901

**Attorney for Defendant, DERIK KUMAGAI**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DERIK KUMAGAI<br><br>Defendant | Case No.: 1:14-CR-00061-AWI-BAM<br><br>**FORMAL OBJECTIONS TO PRESENTENCE INVESTIGATIVE REPORT AND SENTENCING MEMORANDUM** |

**TO THE HONORABLE ANTHONY W. ISHII AND ASSISTANT UNITED STATES ATTORNEYS KEVIN ROONEY AND GRANT RABENN.**

## I. FORMAL OBJECTION TO PRESENTENCE INVESTIGATIVE REPORT BY THE FEDERAL PROBATION OFFICE

The plea bargain previously entered into between the prosecution and the defense contained a calculation agreed to on Page 11 of that plea bargain agreement. The total adjusted calculation brought the case to a Level 22. This was based on an agreement and understanding of both the prosecution and the defense that four levels should be added to the calculation based on U.S.S.G. Section 2C1.1(b)(2) and 2B1.1(b)(C). The probation report calculates the amount of the

loss such that six levels, rather than four should be added. (Under the Probation interpretation, the base level offense is 24 compared with 22 under the plea bargain agreement. This, of course, does not include the acceptance of responsibility levels totaling 2 + 1= 3 that both the probation report and the prosecution and defense agreed to).

It is the position of the defense that under these guidelines sections referred to above four levels rather than six levels should be calculated. That would bring the base level to 22, and with the agreed to points off for acceptance of responsibility the final adjusted level would be 19, not including the further agreement by the prosecution under Section 5K1.1 of the sentencing guidelines and/or rule 35 of the Federal Rules of Criminal Procedure.

It is the position of the defense that the value to be obtained by Detective Derik Kumagai in the facts of this case was what he received in return for what he intended to do. Once that was accomplished, the crime completed. He received $20,000.

For the above reasons, it is respectfully requested that the level enhancement on this point be four levels, as oppose to six levels. That will bring the total adjusted level to 22 rather than 24. With acceptance of responsibility levels off, this would bring the bottom level to 19, not including any 5K adjustment recommended by the prosecution.

## II. DEPARTURES AND VARIANCES

It is also suggested that the court consider the following as being applicable to Defendant Kumagai and which should result in a further downgrading of his total level to be sentenced on.

In an effort to come to a just and equitable sentence on each individual that is charged, and convicted in the Federal System, the court is to consider Departures and Variances which

may not be adequately reflected in a mathematical calculation of the Federal Sentencing Guidelines:

> "It has been uniform and constant in the Federal Judicial tradition for the Sentencing Judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (Gall v. United States, 128 S. Ct. 586, 598 (2007), which quoted Koon v. United States, 518 U.S. 81, 113 (1996)).

In United States v. Nunez-Nava, 524 F. 3d 1137 (10th Cir 208) a sentence of one year and one day was upheld as reasonable for a defendant convicted of possession with intent to distribute 100 grams of heroin with a guideline range of 46-57 months where the District Court determined guideline range was greater than necessary to meet the goals of § 3553(a)(2). The court focused on his personal history and characteristics, including a long work record, community support, a lack of prior criminal record, and, in that case, being caregiver and sole supporter of his young son and elderly parents. Additionally, he was referred to as a low risk for recidivism.

## A. PERSONAL HISTORY AND CHARACTERISTICS

Mr. Kumagai was born and raised in the Central Valley. His family were farmers and business owners. His grandparents were placed in relocation camps during the second world war. Both of his parents were born in relocation camps. His family eventually returned to the Central Valley. His grandfather was a Deputy with the Madera County Sheriff's Department.

He has a wife and three kids. His children range in age from 21 to 7 years of age. He has been married for 16 years.

**B. LONG WORK RECORD**

Mr. Kumagai began work at the age of 18 and had been gainfully employed since. He began working for the Fresno Police Department in 2000. He worked as a police officer for 14 years. Five of those years he served as a training officer at the Regional Training Center. He has trained thousands of law enforcement personnel from throughout the western states. A few of the topics instructed include Racial Profiling, Community Policing, Emergency Vehicle Operaions, Firearms, First Aid CPR, legal updates, Officer Safety, Field Tactics, and Defensive Tactics.

**C. COMMUNITY SUPPORT**

Mr. Kumagai has the complete support of his immediate and extended family. He has lived in the surrounding community of the Fresno Metropolitan area for his entire life. During that period of time he has cemented his friendships and family support.

**D. LACK OF PREVIOUS CRIMINAL RECORD**

As the court can see by the report and recommendation of the Federal Probation Office, he has no absolutely no criminal record during his 41 years of life. Indeed, given his employment as a sworn Peace Officer for the City of Fresno Police Department, he would not be allowed to continue in that capacity if he did have a criminal history.

**II. LOW RECIDIVISM RISK**

Mr. Kumagai will no longer be allowed to hold the position of Police Officer with the City of Fresno, or any other policy agency given this conviction. Therefore, the risk of him re-offending for the charge that he has pled guilty to is non-existent. The collateral consequences that exist for an individual in Mr. Kumagai's position are tremendous! He has not only lost his job, and his ability to provided financially for his family, he must now find a new way, other than being a Peace Officer, to make a living. Indeed, as the court knows, cases such as this automatically receive both Broadcast and Print media publicity. This too is a collateral consequence for Mr. Kumagai and his ability to move on and become a productive member of society.

The guidelines, in and of themselves, often do not implement the statutory objectives of a sentencing:

> "The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug and alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public services are not ordinarily considered under the guidelines. See USSG, Manual § 5H1.1-6, 11, and 12. These are however matters that § 3553(a) authorizes the Sentencing Judge to consider. (See 18 U.S.C. § 3553(a)(1). (Rita v. U.S., 127 S.Ct. 2456, 2473 (2007)).

"It is fair to assume that the guidelines, insofar as practicable, reflect a rough approximation of the sentences that might achieve Section 3553(a) objectives." (Rita vs. U.S., 127 S.Ct. 2456, 2465).

The sentencing judge may take into consideration that the guideline sentence should not apply, "because the guideline sentence itself fails properly to reflect Section 3553(a) considerations . . ." (Rita v. U.S., 127 S.Ct. 2456 at 2465). The collateral consequences, previously spoken of, are something that a sentencing Judge should take into consideration and can properly be justified under § 3553(a). Mr. Kumagai is well aware of his conduct. The records should reflect that almost immediately he resigned his position from the Fresno City Police Department as a Police Officer, and volunteered to and did set up a meeting with the U.S. Attorney's Office and law enforcement to answer all of their questions and admit the entirety of his actions. There can be little doubt in this case that Mr. Kumagai has demonstrated his heart felt remorse. This too is a factor under the cases referred to in this Sentencing Memorandum that it is requested the court take into consideration when sentencing Mr. Kumagai.

A non-guideline sentence is authorized after Booker based on § 3553(a) factors even for grounds that do not support a departure. (U.S. v. Chase, 560 F.3d 828 (8th Cir. 2009). In the Chase, supra, case the court had failed to consider his advanced age, military service, health issues, and employment history all of which it was agreed under the case could warrant a downward variance under § 3553(a) (U.S. v. Howe, 543 F.128 (3d Cir. 2008). Such a variance

was allowed in this case even based on a guideline range of 18-24 months and resulted in a sentence of two year probation with three months of home confinement for wire fraud. (Among other things, they considered Howe's heartfelt remorse) . . .

In Gall v. U.S., 128 S. Ct. 586, 593 (2007), the counter-effective result of imprisonment on the defendant's rehabilitation was considered (see also U.S. v. Collington, 461 F.3d 805 (6th Cir. 2006) in which a drop of about 68 months was allowed and considered proper by the sentencing Judge to still reflect the seriousness of the offense (in this case a drug/gun case) and at the same time allow for the possibility that the defendant could be reformed and go on to lead a productive life because of his youthful age (he was in his mid-30s).

Section 3553(a) includes determining, the goal of a, "Just Punishment," (Section 3553(a)(2)(A) and making sure that the sentence includes an adequate deterrence as indicated in § 3553(a)(2)(B). (See also U.S. v. Paul, 239 F.App 353 (9th Cir. 2007). These cases had to do with a first time offender and the reasoning of the court that incarceration for a first time offender would have a greater effect than a repeat offender. Again, the Paul, supra, case refers to the fact that the defendant displayed remorse. This particular type of reasoning was used in U.S. v. Cull, 446 F. Supp.2nd 961 (Eastern District of Wisconsin 2006) in which the advisory range was determined to be 10-14 months for a marijuana offense but he was sentenced to two months in jail and four months home confinement on the basis that he had never been confined before and this was sufficient to impress on him the seriousness of his crime and detour him from reoffending. As is mentioned in this Sentencing Memorandum, studies have shown that individual defendants in Mr. Kumagai's position very rarely, if ever, reoffend. This is true because, as mentioned above, Mr. Kumagai will never have the opportunity to reoffend in the manner that he did. It is also true, as indicated, in this Sentencing Memorandum and the studies

referred to therein, that a period of incarceration for a first offender like Mr. Kumagai has not only devastating effects on such a defendant, but also devastating consequences. In other words, the purposes of the objectives of sentencing in the federal system are met more easily by such an individual.

In addition, police officers, because of their position, are recognized to hold a certain position of vulnerability in a federal prison. In Koon v. U.S., 518 U.S. 81 (1996) it was determined that there was no abuse of discretion to grant a downward departure to police officers convicted of Civil Rights violation due to their vulnerability in prison. Indeed, because of this vulnerability factor other courts have granted a variance even based on the way a defendant looked, and would be considered to other prisoners (U.S. v. Lara, 905 F.2d 599 (2d Cir. 1990). In this case a downward departure was granted from 10 years to 5 years because of the defendant's youthful appearance and bisexuality making him vulnerable to victimization, a factor not considered by the Guidelines. U.S. v. Volpe, 78 F. Supp. 2d 76 (E.D.N.Y. 1999) granted a two level departure due not only to the notoriety of the case, but also the defendant's status as a police officer which they concluded left him unusually susceptible to abuse and which might require a lot of segregation in a federal prison. Mr. Kumagai perfectly fits into this particular discussion. Because of who he has been for the last 14 years as a police officer, such a placement/classification of a Federal Prisoner under these circumstances can, and almost always is, problematic.

While U.S.S.G. § 5H1.6 generally discouraged departures based on family ties and responsibilities the cases of Booker, and Rita, (previously referred to) free courts to consider these factors as part of their analysis under § 3553(a). The previously referred to case of U.S. v. Munoz-Nava, 524 F.3 1137 (10th Cir. 2008) giving a defendant with a guideline range of 46-72 a

sentence of one year and one day in a drug case, considered, among other things, that defendant's responsibilities as the sole supported of an 8 year old son and elderly parents along with the fact that the likelihood of him reoffending was not high . . . another example of this is demonstrated in U.S. v. Gauvin, 173 F.3d 798 (10th Cir 1999) in which the court held that a departure under § 5H1.6 was warranted to minimize the impact on the defendant's children and his wife under the circumstances indicated in that case. Mr. Kumagai, since his resignation from the Police Department and since the Indictment in the current case, has done what he can (given that his skill set is in law enforcement which he could no longer do) to provide for his family. It is documented through pre-trial services Officer Jacob Scott that Derik Kumagai, since August of 2014 has started/established a business that he works 40 hours a week in raising beef cattle and selling the cattle. This is hard work, and this is new work for Mr. Kumagai. However, his loyalty and dedication to his family is such that he is willing to do what he needs to do in order to provide for them. This too is a circumstance which § 3553(a) allows the court to consider when molding the appropriate sentence for a federal criminal defendant.

While awaiting the court process, Ms. Kumagai's employment was unexpectedly ended due to the shutdown of her place of employment. She had been employed with Chukchansi Casino since the day it began operation. Mr. Kumagai has started his own business and is providing for his wife and three children. If the casino is to reopen, his wife has a commute of an hour each way and would have difficulties providing transportation to school and care for the school age children who attend different schools.

Both the Gall decision and in U.S. v. Baker, 445 F. 3d 987, 992 (7th Cir 2006) the court affirmed reduction of the defendant's calculated guideline sentence based in part, by the defendant's employment history, the starting of his own business, the lack of criminal history,

and the higher education which the defendant had. United States v. Whitehead, 532 F.3d 991 (9th Cir 2008) upheld a reduced sentence for a defendant who was remorseful, was employed, supported his daughter, and no longer presented a threat to the community.

Mr. Kumagai has shown remorse throughout the process, he does not present a risk to the community as he will no longer hold a position directly related to the crime pled to.

Perhaps also significant is U.S. v. Carson 560 F.3d 566 (6 Cir 2009) in which a departure was granted for a policemen (whose guideline range was 15-21 months) to three years probation where under § 3553(a) factors the court emphasized that this was one period of aberrant behavior by this defendant and that he had a good work history in which he had no significant history of citizen complaints against him. While the conduct of Mr. Kumagai can, of course, not be overlooked by a sentencing court, he does fall squarely into the fact pattern that was described above in U.S. v. Carson, supra. This was, in fact, one period of aberrant behavior with absolutely no indication that it had ever occurred before, and obviously will never occur again. There is absolutely no indication at all by the law enforcement investigation in this case to suggest that Mr. Kumagai's actions were anything other than the charged and pled to crime on the charged and pled to date.

Mr. Kumagai received no discipline during his 14 year career in law enforcement. He received numerous commendations and volunteered countless hours training academy cadets to community volunteers. He was an association elected member of the Legal Defense Program at the Fresno Police Officer's Association.

A study called Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 12, 28 (2004) indicates: "Recidivism rates decline relatively

consistently as age increases." Defendants over the age of forty exhibit markedly lower rates of recidivism in comparison to younger defendants. Mr. Kumagai is presently 41 years of age. He has maintained employment from the age of 18 and continues to work.

As previously indicated in U.S. v. Howe, supra, it was appropriate for the sentencing judge to partially reduce the defendant's guideline sentence in a wire fraud case based on, "heart felt remorse." This is properly justified under §3553(a).

In this case the Defendant, Derik Kumagai, has, from the time of his arrest been forthcoming regarding his actions.

Mr. Kumagai has offered his complete admission to investigators and prosecutors involved in the matter. He has expressed remorse to everyone he has let down. This includes family, friends, law enforcement personnel and the community he served.

Under U.S.S.G. §5K2.20 a Departure for aberrant behavior is authorized for, "a single criminal occurrence or single criminal transaction. It is limited by certain characteristics. (Those characteristics have to do with both the nature of the crime itself and the defendant). Effective October 27, 2013 departure was also disallowed for, "serious drug trafficking offenses", including any offense with the statutory mandatory minimum regardless of whether the defendant meets the safety valve qualifications. After Booker, supra, and Rita cases, supra, these restrictions are, in effect, advisory only. They can still be the basis for a variance under section 3553(a).

As part of variance considerations, the fact that a defendant has been punished by collateral consequences is a appropriate consideration for a downward variance. (United States v. Gardellini, 545 F.3d 1089 (DC Cir. 2008). As indicated in U.S. v. Wachowiak, 496 F.3d 744 (7th Cir. 2007), Derik Kumagai is considered a low risk for recidivism, has strong support from his

family, and like the defendant in that case the guidelines, in and of themselves, failed to account for the significant collateral consequences the defendant suffered and will continue to suffer as the result of this conviction. Indeed, like the defendant in U.S. v. Stone, 374 F.Supp. 2d 983 (D.N.M. 2005) and U.S. v. Samaras, 391 F.Supp 2d 805, 809 (E.D.Wis. 2005), as a consequence of his conviction, the defendant lost a good public sector job, which is another factor allowed to be considered but not considered by the guidelines alone.

The mistake that the defendant Derik Kumagai made was in fact a, "isolated mistake." (See U.S. v. Howell, supra, in fact, as indicated in U.S. v. Hadash, 408 F. 3d 1080, 1084 (8th Cir 2005):

> The defendant was, ". . . a law abiding citizen, who did an incredibly dumb thing and, . . . was not the type of defendant the guidelines section was designed to punish."

The entire Federal Law Enforcement Investigation did not indicate that Defendant Kumagai's involvement in the stated criminal activity was anything other than accepting this $20,000 bribe. (A review of bank records did not indicate any type of money laundering, etc.). Mr. Kumagai went into the U.S. Attorney's Office and subjected himself to questions for quite a length of period of time with regarding to this isolated criminal activity.

His finances and obligations by way of bills, is what resulted in this criminal activity. As the Probation Report will no doubt indicate, Defendant Kumagai's role as part of his family unit continued to increase with sickness, devastation, and children to the point where he felt an obligation to be able to provide in a certain way for his family. Admittedly, and not offering any excuse, the way he chose to do it by way of this criminal activity was wrong. The collateral consequences, as referred to above, for the rest of his life as a result of this criminal conviction

are devastating and more than the usual individually would have to suffer. For the above reasons, as a result of these factors brought to bare in this Sentencing Memorandum, and as a result of those factors which no doubt will be delineated in the Probation Office Report and recommendation to the court, it is respectfully requested that the court take into consideration the Section 3553 factors which have been mentioned when molding the appropriate sentence to serve both the ends of justice, and Mr. Kumagai and his family.

## III. CONCLUSION

It is respectfully submitted that the court fashion a sentence which will allow Mr. Kumagai to not only realize the wrongfulness of his act, but a sentence that will also him to get on with his life in a new endeavor for work, and provide for his family who he has continued to take on an escalated role with.

Respectfully Submitted,

Dated: 4/27/15

/s/ E. Marshall Hodgkins
**E. Marshall Hodgkins,**
**Attorney for Defendant,**
**Derik Kumagai**